Thank you, Your Honor. May it please the court, my name is Rebecca Brew and I represent the two remaining individual defendants, the unpaid volunteers, Heath Campbell and Paula Glidden in this case. The issue before the court this morning is interlocutory qualified immunity of Mr. Campbell and Ms. Glidden who were, as I just stated, unpaid volunteers at the Pahrump Town Festival in the fall of the summer of 2009. They were people who had participated as volunteers for this festival and if you're not familiar, Pahrump is a small town about an hour outside of Las Vegas, kind of in the middle of nowhere, but they have a very active community. Mr. Kulkin has sued these individuals and others after there to pay the appropriate deference in the non-profit versus profit rate that had been in place for many years in the town of Pahrump but had never been enforced. A new town manager by the name of Bill Cobart came into town, a new sheriff in town, and he said, we're going to start enforcing this now and we want the people who are entitled to it to be able to take advantage, but those who aren't need to pay the full rate and it's about an $80 difference for the booths. In this particular case, Mr. Kulkin from the very beginning refused to pay the difference. His argument was that for years he had been renting two booths, one that he paid for, for the Boy Scouts, and one that he used for his own personal use. He was a well-known political activist in the community and would chat with people, talk about his political perspectives in the other booth. There was never a question about whether the Boy Scouts were going to have to pay the full rate. There was never a demand. It was just well, not in dispute that the Boy Scouts were non-profit and entitled. But Mr. Kulkin from the very beginning said, I'm not paying that. I've never paid it before. His argument about, and I'm sorry, I would like to reserve two minutes if I may. You certainly may, but just watch the clock. Okay, thank you. So he refused from the beginning and said, I am not going to pay. Ms. Glidden, Mr., I'm sorry, Mr. Campbell was in charge of the registration and the folks showing up that morning, and Ms. Glidden was just another person who was helping with the process. When Mr. Kulkin refused to pay, he was then left the trailer as if he was going to go set up his booth anyway. Mr. Campbell went after him and Mr. Kulkin grabbed Mr. Campbell by the neck and a melee took place and then they, he left. Counsel, I think you would help your case if you get right to the issue that you want to focus on. Thank you. Thank you, Your Honor. The issue here is the qualified immunity of Mr. Campbell and Ms. Glidden. Judge Proe, who I have to say I have a lot of respect for, what I think in this particular case is that when he was on the equal protection claim, because as you well know, in order for there to be, there has to be a constitutional violation and the only claims that were left in this case, according to Judge Proe, is these two individual defendants as to the equal protection claim and then the Federal civil conspiracy claim. But isn't the real point here that there was a differential treatment with respect to the required documentation? Doesn't that make out an equal protection claim? Well, but the law says that they have to be similarly situated and the law says that But of course, we can't look to similar situated because that's a question of fact, which is not in front of us. We're here only on the interlocutory, aren't we? The qualified immunity, yes. But before we get to that, do we not need to talk about whether there was this constitutional violation and equal protection and did Judge Proe have to be entitled to qualified immunity? One is there's no violation. The other is they had no good reason to know that there was a violation, even if there was one. And I wanted to ask you about the application for the vendor status. It's got so many page numbers, I'm not really sure. It's Defendant's Exhibit No. 4, but it's the application. And he says he's representing self and self-representation of the scouts. And my question to you is whether he was requested to give documentation as to the scouts or only as to self. Only as to self. Okay. Well, is there any suggestion that he personally is a non-profit? There is no question. He has said all along, I am not a non-profit, I'm not entitled, I'm simply not going to pay. Well, I don't understand why that would be a violation of anything. If he's not a non-profit and he doesn't claim to be a non-profit, to ask for a non-profit status is, I'm at a loss, I guess, to understand how the district court got where it got, but that's just me. So there's nothing to suggest that the scouts were not asked for any documentation, correct? They were not, Your Honor. Okay. It just didn't define. It's only he individually, where he says representing self, that he was asked, why are you a non-profit? Is there anyone else who asked for non-profit status on behalf of their own personal self? Well, I can't answer to all the hundreds of applicants, because what I focused on are the four that Judge Pro focused on, but no, as far as I'm aware, there was no – there may – now, I don't want to misspeak, because this was during a political – some election times, and there may very well have been candidates who rented booth space, but I can't answer that question for you right now. But there was no question – what happened here was that he refused. He acknowledged, I am not a non-profit, and I'm not going to pay the difference. And was there anyone else who was similarly situated in the sense of refusing to pay the differential while acknowledging that they are not personally a non-profit? No, Your Honor. Not a single one. And that was the – that's the point of exception that we take with Judge Pro. The comparators that he used for the Evil Protection Analysis was that other folks who were not required to provide documentation before they were allowed to set up. And our argument is that those were not the proper comparators, that they – these comparators under case law need to be prima facie, according to the Gearhart case, prima facie, identical in all relevant aspects. And these other folks, not – none of them refused to pay. And all – the small – the slight anomaly that we have here was the issue with the Pahrump Valley Republican women, where it was somehow they got lost in the shuffle, where they had not realized that they had not paid the differential. And as soon as the town of Pahrump recognized that, they invoiced them, and it was paid. But that was not the same situation as Mr. Culkin, who just said, I'm not paying you. I have never paid it. I've rented this food space for 10 years, and I'm not paying you. And then it turned into a physical melee, and he eventually pled guilty to misdemeanor battery. So that was – that's what we think is the – are the proper comparators, are others who were refusing to pay. So the law is that individuals who are not similarly situated do not have any kind of equal protection – any kind of equal protection rights, and that is, in this case, what has happened here with Judge Propp. Counsel, you're down to about a minute. I would like to reserve that. You may do so. Thank you, Your Honor. Your Honor, I'm Nancy Lord here for the appellate. Will you speak into the microphone? Sure. I'm sorry. I am Nancy Lord here for the appellate. Not quite that close. Okay. And I'm really very happy, very honored to be here, and I'm so sorry that circumstances made me late and I didn't land well. You're here now. That's the reason. Okay. Thank you. I found it very interesting. I was listening to the case before this on Title 641 and the issue and the question of documentation versus reality. That interplay seen in that case is also relevant to this one. Counsel, let me ask you directly to go to what disturbs me about the way this case has gone so far. As I understand it, it was well known to the remaining defendants that your client individually was not a nonprofit. Correct. But – Okay. And if he is not a nonprofit, then I don't understand why enforcing the policy of nonprofits get to pay less is an equal protection violation, because the policy itself, that nonprofits get to pay less than for-profits, you haven't challenged that facially, or at least it's not in the case right now. So it's merely – I don't see why they wouldn't at least be entitled to qualified immunity. They know he's not a nonprofit, and they have two different prices, one for-profit and one for-nonprofit. You're correct, Your Honor. But his booths, he had two booths for him and the Boy Scouts. As I understand it, there's no question about the Boy Scouts piece. Well, okay, but the question that comes in is, were the booths really two separate booths, or were they all to be used together? As Mr. Culkin put it, he considered himself like a celebrity endorsement for the Boy Scouts. Nothing in his booth had anything to do with his business, any kind of for-profit enterprise. Except that if you look at his application, it's for two separate things. He's asking for two booths, and his vendor name is his name slash and Boy Scouts, representing himself slash Boy Scouts. He separates out those two, himself with his name and the Boy Scouts. And so I don't understand why it wasn't reasonable to, when his own application has two separate things, to treat them separately. It might have been reasonable had they done it all along, but they had treated him as, you know, working with the Boy Scouts for 10 years. This was not something that happened once. He had been lulled into thinking. Well, he has to demonstrate that there was a violation of equal protection, not a change in policy where now we're going to enforce our valid existing policy, because that's really all that you've demonstrated, it seems to me, is that he got off lucky in past years, and therefore, as a matter of constitutional law, he gets to get off lucky this year, too. And I have difficulty seeing why that's an equal protection problem. The issue as it was presented at the time to him was not the reality of whether or not he was a nonprofit, but whether he had documentation. And the documentation that he was asked for was 501c3 status, which is the documentation that's listed in the application as being that did not have 501c3 status, but had, in fact, Nevada nonprofit status. Well, he didn't have that, either. No, he didn't. But neither did the district attorney's office or the Pahrump Valley women or those two in particular. And I find it very interesting what the appellant had to say in their reply brief to the motion for summary judgment. This is Exhibit 22, page 8, line 22, about the district attorney's office, that as a government entity, we all know they're not there to make a profit. There is no allegation anywhere that Mr. Culkin was there as a profit-making entity. He wasn't there on behalf of his business, Servco. He had no ---- Your claim hinges on the documentation requirement that they ---- we don't care about what happened in the past. Now, for this particular festival, the marching orders were, let's apply this policy now, and we're going to apply it to everybody. And your claim is, but yet they didn't apply it to everybody equally. They asked him for documentation, but they didn't ask other people for documentation. Of documentation in his case, the 501c3. You're correct, Your Honor. The application said you must show 501c3. He was asked for it at the very last minute. He didn't have it. Others didn't have it either. And that's fine. There's a big difference between a federally, you know, mandated 501c3 and a Nevada nonprofit. These were little entities out doing whatever it was without a profit-making motive. And that was okay. They were not asked, though, for his 501s, for their 501c3s. He was. He was told he could not set up. Mr. Campbell followed them. Because he refused to pay the differential. And did anyone else on this record refuse to pay the differential and still be allowed to set up? Well, they didn't pay the differential. They didn't actually refuse and have a confrontation about it, but they hadn't paid. They hadn't. There's the issue with the Pahrump Valley women, who didn't have a nonprofit status, who did, in fact, pay later or something like that. But nobody else was actually accosted at the festival on the day they were scheduled to set up at the very last minute, followed out to their set-up area by a man 20 years younger and three or four inches taller than them, and yelled at and told, I'm not going to do this. Let's take it outside or something like that. And Mr. Culkin kind of, he didn't really squeeze his neck. He kind of just grabbed him by the shoulders and said, leave me alone. And then this young man, Heath Campbell, went on the news that very day and talked about this as an assault and said he filled out his report so he could talk to the police. That is the DVD that Your Honors had asked to see. He went right on the news and talked about this. There's also allegations that he was walking around in a neck brace that no doctor had prescribed. This whole thing was directed at Mr. Culkin. And there was never any allegation that he was intending to use the booth as a for-profit thing. No one has said the reason we're asking for the documentation is we don't want people and you should make money, you should pay more. That's not the issue here. The issue here is that as they presented, do you have the paperwork? And only Mr. Culkin was asked, was demanded to have 501C3. Everyone else was allowed to set up as Nevada non-profits, and in the case of the Pahrump Valley Women and the District Attorney's Office, no real documentation, just the general knowledge that they're not profits. So your argument is this is a class of one case where only he was required to provide the documentation. That's correct. And that's the denial of equal protection. That's correct. It's the class of one as in Village of Allek and very on point. In that case, everyone else was asked for a 15-foot easement, they were asked for a 30. Everyone else was asked for the Nevada non-profit, even though the form said 501C3, whereas Mr. Culkin was asked for a 30-foot easement. But he didn't have any non-profit status, though, right? No. So in that sense, it doesn't matter which one they asked for. He could never supply it. But he wasn't there for Servco. Had they asked more specifically, he could have said it. That doesn't answer my question. He could never have supplied evidence of any kind of non-profit status for himself personally because he didn't have any such documentation. Personally, no, Your Honor. Okay. But he could have provided it for some of the political groups whose flyers would have been at the table very easily. Is there any evidence that these particular defendants knew that any of the other booths that were allowed to set up did not have or had not supplied appropriate documentation, that they knew such a thing? Absolutely. These were the people who were in charge of the vendors. Ms. Glidden was kind of the manager of the whole festival, and Mr. Campbell was tasked with getting everybody's fee, making sure they paid, giving them their information as to where to set up. He had access to all the paperwork. So he certainly had reason to know that the other non-profits did not have 501C3 status. Plus, it's a small town, Your Honor, and these people all know each other. People know who these entities are. Right. And they also knew that, which goes back to my question earlier, if they already knew that he wasn't the damage to him, in a sense, wasn't asking for the documentation because he didn't have any, and it didn't matter whether they asked him or not. They already knew that he wasn't a non-profit. Everybody knew he wasn't a non-profit, but he wouldn't pay the other fee. So I guess that it's just I don't understand why asking for the documentation even matters, because it's clear that he wasn't a non-profit and that they were entitled to ask for the fee. Well, in all fairness to them, there is some evidence in the record that there was a letter sent that he did not receive, and that was why this was a surprise. But nevertheless, he didn't receive it. So he came to set up his booth and was told suddenly for the first time in ten years, and he kind of lost his temper a little bit. But he actually came back to pay the $80. After he went to lunch and thought about it, he was going to come back and just pay the $80 and set up his booth. And at that point, they had him arrested over the scuffle that was actually instigated by Mr. Campbell. But so I don't understand why he's damaged in any way by the request for documentation, because if the violation is the request for documentation, but it played no role because everybody knew, including him, that he wasn't a non-profit, I don't understand how it has any causal effect to anything that happened. That's not really what injured him. What injured him was what it led to, which was the scuffle with Heath Campbell, the arrest, and then not being allowed on the parade. Okay. But the scuffle isn't the equal protection violation that's alleged. We're down to looking at the equal protection violation. And if none of his damages arose from the request for documentation, but they all ultimately arose from a scuffle, I guess I just have difficulty following it. And that is the defendant's position, the appellant's position, that it all arose because of the scuffle. But he was denied his table, his table that he expected to use, that had he been asked, he couldn't have produced non-profit, but he could have produced political organizations that might have been at the table. He wasn't given a chance. The letter that went out that he says he didn't receive, that letter went out in advance of the festival to everybody? Correct. That's what they alleged. But he did not get it. He didn't know anything about it. And the real damage is that he was excluded from the festival. The scuffle that this led to, its publicity, his damage to his reputation, being excluded not only from the festival but from the parade where he was going to drive a bus down the street, and there's no reason that that would be – there was no differential there of non-profit, for-profit status, and there was no reason that he would in any way breach the peace driving a bus. And yet he was told he could not drive his bus down the street either. All right. Thank you, counsel. I think your time is well exceeded. Thank you. I'm so sorry. Thank you so much. No problem. No problem. Ms. Brooke, you have some reserved time. Thank you, Your Honor. Mr. Culkin was excluded from the festival because he refused to pay. Had he shown up that morning – and we would – Ms. Glidden testified, and it's in the record, that he had actually called her – he says he didn't receive the letter, but he had actually called her and said, do I really have to pay this? And she said, yeah, you really have to pay. And – but he did not get his booth because he refused to pay, not because of whatever kind of misunderstanding there may have been about the documentation. He refused to pay which? The profit or the non-profit? The difference, the $80 difference, the for-profit. Because he had already paid the non-profit rate. And they – he was told, you need to – we need to collect the difference. On the one booth, one of the two. On one booth, yes. Just the one, not the Boy Scout booth. I wanted to just close with talking to you about the Al-Kid case and that very high – Which case? The Al-Kid case that has been cited and that very high standard for qualified immunity. That standard in the Al-Kid case is that every reasonable official would have understood that what he was doing violates that right. Ms. Glidden and Mr. Campbell relied on Mr. Cobarger. Mr. Cobarger, you're the boss. What should we do? Mr. Cobarger, who was granted – who was dismissed in this case by Judge Proe, said collect the money from everyone. If you – when you look at the record, you look at the EORs on those particular comparators that Judge Proe focused on, you will see that there is – that they either – that none of them refused to pay and that they either paid or provided the appropriate paperwork. Mr. Culkin, no matter what, was never going to be able to provide it, and he didn't care. He was not going to pay that $80 difference. That standard that's set in Al-Kid that any – every reasonable official would know beyond on notice that they were violating someone's constitutional rights is nowhere close here. And we've got two unpaid volunteers. The essence of qualified immunity is to allow people to do their jobs or engage in these kinds of activities. I will tell you that Ms. Glidden and Mr. Campbell no longer volunteer at the festival, and that is the essence of what qualified immunity – why it should apply in this case. Thank you. I'm looking at your opening brief. Did you cite Al-Kid? I – it's in my reply brief. It's in the reply brief? Yes, Your Honor. All right. Thank you. Counsel, your time has expired. Thank you, Your Honor. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Graber, Nguyen